**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

EZEQUIEL ZARATE CHAVARIN,                3:17-cv-00104-MMD-VPC

                         Plaintiff,

      v.

NANCY A. BERRYHILL,                       **REPORT AND RECOMMENDATION**
Acting Commissioner of Social Security,   **OF U.S. MAGISTRATE JUDGE**

                         Defendant.

      This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.  Before the court is plaintiff's motion for reversal or remand (ECF No. 14), defendant's cross-motion to affirm (ECF No. 16), and plaintiff's reply (ECF No. 17).  For the reasons set forth herein, the court recommends that plaintiff's motion be granted, and defendant's cross-motion be denied.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

      On February 22, 2013, Ezequiel Chavarin ("plaintiff") protectively filed for Social Security Disability Insurance ("SSDI") benefits under Title II of the Social Security Act, alleging a disability onset date of October 29, 2012.  (Administrative Record ("AR") 31, 209–09.) Plaintiff also filed an application for Supplemental Security Income disability payments under Title XVI of the act on March 4, 2013.  (*Id.* at 31, 210–15.)  The Social Security Administration initially denied plaintiff's application on July 29, 2013, and upon reconsideration on January 21, 2014.  (*Id.* at 87–91, 95–100.)

      On March 11, 2015, plaintiff and his attorney appeared at a hearing before Administrative Law Judge ("ALJ") Eileen Burlison.  (*Id.* at 46–66.)  Carly Caughlin, a vocational expert ("VE"), also appeared at the hearing.  (*Id.*)  The ALJ issued a written decision on June 4, 2015, finding that plaintiff had not been disabled at any time between the alleged onset date and the date of the

1    decision.  (*Id.*)  Plaintiff appealed, and the Appeals Council denied review on January 18, 2017.

2    (*Id.* at 1–7.)  Accordingly, the ALJ's decision became the final decision of the Commissioner

3    ("defendant").  Having exhausted all administrative remedies, plaintiff filed a complaint for

4    judicial review on February 16, 2017.  (ECF No. 1.)

5                              **II.    STANDARD OF REVIEW**

6            The initial burden of proof to establish disability in a claim for SSDI benefits rests upon

7    the claimant.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  To satisfy this burden, the

8    claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of

9    any medically determinable physical or mental impairment which can be expected . . . to last for a

10   continuous period of not less than 12 months . . .."  42 U.S.C. § 423(d)(1)(A).

11           This court has jurisdiction to review an ALJ's decision to deny a claim for benefits after

12   the claimant has exhausted all administrative remedies.  *See Brewes v. Comm'r of Soc. Sec.*

13   *Admin.*, 682 F.3d 1157, 1161–62 (9th Cir. 2012).  The court must affirm the ALJ's decision

14   unless it rests on legal error or is unsupported by substantial evidence in the administrative

15   record.  *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014); *see also* 42 U.S.C. § 405(g)

16   ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial

17   evidence, shall be conclusive.").  The substantial evidence standard is not onerous.  It is "more

18   than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable

19   mind might accept as adequate to support a conclusion."  *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th

20   Cir. 2012) (internal quotation omitted).

21           Although the ALJ need not discuss every piece of evidence in the record, she cannot

22   ignore or omit evidence that is significant or probative.  *Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th

23   Cir. 2012).  The ALJ's discussion must adequately explain the decision in light of such evidence.

24   "The ALJ, not the district court, is required to provide specific reasons for rejecting [the

25   evidence.]"  *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (specifically

26   discussing rejection of lay testimony).  The district court's review is thus constrained to the

27   reasons asserted by the ALJ.  *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

28

1    To determine whether substantial evidence exists, the court must look at the record as a

2    whole, considering both evidence that supports and undermines the ALJ's decision; it "may not

3    affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec.*

4    *Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (internal quotation omitted).  Where "the evidence is

5    susceptible of more than one rational interpretation, the decision of the ALJ must be upheld."

6    *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (internal quotation omitted).  The ALJ alone is

7    responsible for determining credibility and resolving ambiguities.  *Garrison*, 759 F.3d at 1010.

8                                    **III.    DISCUSSION**

9    **A.    SSDI claims are evaluated under a five-step sequential process.**

10    The Commissioner follows a five-step sequential process for determining whether a

11    claimant is "disabled" for the purposes of SSDI.  20 C.F.R. § 404.1520(a)(4); *see also Barnhart v.*

12    *Thomas*, 540 U.S. 20, 24 (2003).  Step one directs the ALJ to determine whether the claimant is

13    engaged in "substantial gainful activity."  20 C.F.R. § 404.1520(a)(4)(i).  If so, the claimant is not

14    disabled and the Commissioner denies the claim.  *Id.* § 404.1520(b).

15    The second step requires the ALJ to determine whether the claimant's medically

16    determinable impairment is "severe."  *Id.* § 404.1520(a)(4)(ii).  "Severe" impairments are those

17    that significantly limit the claimant's physical or mental ability to do basic work activities.  *Id.* §

18    404.1520(c).  The Commissioner will deny the claim if the claimant lacks a severe impairment or

19    combination of impairments.  *Id.*

20    At step three, the claimant's impairment is compared to those listed in the Social Security

21    Regulations at 20 C.F.R. Pt. 404, Subpart P, Appendix 1.  *Id.* § 404.1520(a)(4)(iii).  The list in

22    Appendix 1 "define[s] impairments that would prevent an adult, regardless of his [or her] age,

23    education, or work experience, from performing *any* gainful activity, not just substantial gainful

24    activity."  *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (internal quotation omitted) (emphasis in

25    original).  Where the claimant's impairment is on the list, or is equivalent to a listed impairment,

26    and the claimant also meets the corresponding durational requirement, the claimant is deemed

27    disabled.  20 C.F.R. § 404.1520(d). However, for an impairment to match a listing, "it must meet

28

3

1    *all* of the specified medical criteria.  An impairment that manifests only some of those criteria, no

2    matter how severely, does not qualify."  *Zebley*, 493 U.S. at 530 (emphasis in original).

3         If the Commissioner does not find disability at step three, review of the claim proceeds to

4    step four.  There, the ALJ considers whether the claimant can perform past relevant work despite

5    the severe impairment.  20 C.F.R. § 404.1520(a)(4)(iv).  If so, the claimant is not disabled.  *Id.* §

6    404.1520(e).  The ALJ will find that the claimant can return to past relevant work if he or she can

7    perform the "actual functional demands and job duties of a particular past relevant job" or the

8    "functional demands and job duties of the [past] occupation as generally required by employers

9    throughout the national economy."  *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001)

10   (internal quotation omitted).

11        In making the step four determination, the ALJ considers the claimant's RFC and the

12   physical and mental demands of the work previously performed.  20 C.F.R. § 404.1520(f); *see*

13   *also Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010).  The RFC is the most the claimant can

14   do despite his or her limitations.  20 C.F.R. § 404.1545(a)(1).  To determine the claimant's RFC,

15   the ALJ must assess all the evidence, including medical reports and descriptions by the claimant

16   and others of the claimant's relevant limitations.  *See id.* § 404.1545(a)(3).  The ALJ is not,

17   however, required to accept as true every allegation the claimant offers regarding his or her

18   limitations.  *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007).  The ALJ must follow a two-prong

19   inquiry where the claimant alleges subjective pain or symptoms.  *Lingenfelter v. Astrue*, 504 F.3d

20   1028, 1035–36 (9th Cir. 2007); *see also* SSR 96-7p, 61 Fed. Reg. 34483 (July 2, 1996).  First, the

21   ALJ determines "whether the claimant has presented objective medical evidence of an underlying

22   impairment which could reasonably be expected to produce the pain or other symptoms alleged."

23   *Lingenfelter*, 504 F.3d at 1036 (internal quotation omitted).  Second, if the first prong is met and

24   no evidence suggests that the claimant is a malingerer, the ALJ may reject the claimant's

25   allegations only by articulating "clear and convincing" reasons for doing so.  *Id.*

26        The "clear and convincing" standard is the most demanding standard in Social Security

27   case law, *Garrison*, 759 F.3d at 1015, and it requires the ALJ to "specifically identify the

28   testimony she or he finds not to be credible and [to] explain what evidence undermines the

4

testimony," *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). The ALJ must therefore cite to the record and discuss specific evidence therein. *See Vasquez v. Astrue*, 572 F.3d 586, 591–92, 592 n.1 (9th Cir. 2008); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The ALJ may consider a variety of factors in weighing a claimant's credibility, including inconsistencies in a claimant's testimony, his or her reputation for truthfulness, an inadequately explained failure to seek treatment, or a lack of support from the medical evidence. 20 C.F.R. § 404.1529(c); *Orn*, 495 F.3d at 636. The focus, however, is ultimately upon the reviewing court. The credibility determination must be "'sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony.'" *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004) (quoting *Rollins v. Massanari*, 261 F.3d 853, 856–57 (9th Cir. 2001)).

If step four demonstrates that the claimant cannot do the work he or she did in the past, the burden shifts to the Commissioner to establish, in step five, that the claimant can perform jobs available in the national economy. 20 C.F.R. § 404.1560(c). There, the ALJ must consider the claimant's RFC, age, education, and past work experience to determine whether the claimant can do other work. *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); *Hoopai v. Astrue*, 499 F.3d 1071, 1075 (9th Cir. 2007). The ALJ will typically reference "the grids," under which a finding of disability may be directed, and also consider the testimony of a VE. *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). Where the grids do not direct a finding of disability, the ALJ must identify other jobs that the claimant can perform and which are available in significant numbers in the claimant's region or in several regions of the United States. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1560(c). If the ALJ establishes that the claimant's RFC and transferable skills allow him or her to perform other occupations, the claimant is not disabled. 20 C.F.R. § 404.1566. Conversely, if the ALJ concludes that the claimant cannot adjust to any other work, he or she is disabled and entitled to benefits. *Id*. § 404.1520(g).

**B.    The ALJ followed the five-step process and concluded that plaintiff was not disabled.**

In reviewing plaintiff's claims for benefits, the ALJ followed the five-step process described above. The ALJ first determined that plaintiff had not engaged in substantial gainful

activity since October 29, 2012, the alleged onset date.  (AR 33.)  At step two, the ALJ found that plaintiff's degenerative disc disease of the cervical and lumbar spine was a severe impairment that significantly limited his ability to perform basic-work related functions.  (*Id.*)  At step three, the ALJ concluded that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any listed impairment.  (*Id.* at 33.)

The ALJ proceeded to step four and made several findings. To begin, the ALJ concluded that plaintiff had the RFC to perform light work, but with some limitations.  (*Id.* at 34.)  For example, the ALJ found that plaintiff is limited to occasional postural activities and occasional manipulative, bilateral tasks.  (*Id.*)  Plaintiff should avoid continuous overhead reaching, and avoid temperature extremes and hazards.  (*Id.*)  Next, the ALJ found that plaintiff's impairments could be expected to cause the symptoms alleged, but that her statements regarding the intensity, persistence, and limiting effects of those symptoms were not entirely credible.  (*Id*. at 34–35.) The ALJ cited two reasons as the basis for the adverse credibility finding: (1) the medical record did not support his allegations of the severity of his symptoms; and (2) the opinions of state agency reviewing physicians were consistent with the ALJ's RFC determination that plaintiff is capable of light work.  (*Id.* at 36-37.)  Finally, based on the evidence in the record and the testimony of the VE, the ALJ concluded that plaintiff was not capable of performing his past relevant work as a cook at a casino and as a stocker because the Dictionary of Occupational Titles ("DOT") categorizes those positions as medium and heavy work.  (*Id.* at 37.)

Proceeding to step five, and relying on the testimony of the VE, the ALJ determined that plaintiff's age, education, work experience, and RFC would allow him to perform occupations existing in significant numbers in the national economy, such as: hand packager, office helper, and sorter of agricultural produce.  (*Id.* at 38.)  Accordingly, the ALJ held that plaintiff was not disabled at any time from the alleged onset date of October 29, 2012, through the date of the decision on June 4, 2015 and denied his disability claim.  (*Id.* at 28.)

C.    **Substantial evidence supports the ALJ's decision.**

In his motion for reversal or remand, plaintiff contends that: (1) the ALJ improperly rejected the opinion of plaintiff's treating doctor; (2) the ALJ improperly discounted plaintiff's

1    testimony as to the severity of his symptoms without providing clear and convincing reasons to

2    do so; and, (3) the ALJ's determination that plaintiff is able to perform other jobs in the local or

3    national economy lacked the support of substantial evidence because her hypothetical to the VE

4    was incongruent with her RFC determination.  (ECF No. 12.)  Plaintiff's arguments are discussed

5    in turn.

6         **1.**       **The ALJ did not err in discounting the opinion of plaintiff's treating doctor.**

7         Plaintiff argues that the ALJ erred in rejecting the movement restrictions that his treating

8    physician, Dr. Dallin DeMourdaunt ("Dr. DeMourdaunt"), recommended because those

9    restrictions are consistent with a finding that plaintiff is capable only of sedentary exertional level

10    work.  (ECF No. 14 at 10.)  The ALJ appears to have accorded Dr. DeMourdaunt's opinion little

11    weight, and instead accorded the most weight to the opinions of the state agency reviewing

12    physicians that plaintiff is capable of light exertional level work.  (AR 37.)  Plaintiff asserts that

13    Dr. DeMourdaunt's opinion should have been given more weight than other medical opinions.

14    (ECF No. 14 at 10.)  Defendants respond that the ALJ properly relied on the medical opinions of

15    the state agency examiners, as well as Dr. Burke, a physician who examined plaintiff for worker's

16    compensation purposes.  (ECF No. 16 at 7–9.)

17         Within the administrative record, an ALJ may encounter medical opinions from three

18    types of physicians: treating, examining, and non-examining.  *Garrison v. Colvin*, 759 F.3d 995,

19    1012 (9th Cir. 2014).  As a general rule, the greatest weight is given to a treating physician's

20    opinion, while the opinion of an examining physician is given more weight than that of a

21    nonexamining physician.  *Id.*  Moreover, a treating physician's opinion that is "well-supported by

22    medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the

23    other substantial evidence in [a claimant's] case record," is entitled to controlling weight.  20

24    C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014).

25    However, the ALJ is not bound by the conclusions of any particular physician.  The ALJ can

26    reject a treating or examining physician's uncontradicted opinion for "clear and convincing"

27    reasons, or reject his or her contradicted opinion for "specific and legitimate reasons," supported

28    by substantial evidence.  *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995).

1    An ALJ provides specific and legitimate reasons where she articulates a detailed and

2    thorough summary of the facts and conflicting medical evidence, stating an interpretation thereof,

3    and making findings. *Garrison*, 759 F.3d at 1012. In supporting a decision to accept certain

4    medical opinions over others, the ALJ may cite contradictions, inconsistency with the evidence,

5    and consistency of the accepted opinions with the administrative record as a whole. *See*

6    *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *Batson v. Comm'r of Soc. Sec.*

7    *Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). However, "[t]he opinion of a nonexamining

8    physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion

9    of either an examining physician or a treating physician." *Lester*, 81 F.3d at 831.

10    Dr. DeMourdaunt was a treating physician because he examined plaintiff several times

11    and treated plaintiff's injuries with epidural injections. (AR 283–292); *Garrison*, 759 F.3d at

12    1012 (physicians who examine and treat patients are "treating physicians"). After the epidural

13    injections failed to relieve plaintiff's pain, Dr. DeMourdaunt restricted plaintiff to: (1) lifting no

14    more than five pounds; (2) pushing and pulling no more than ten pounds; (3) bending no more

15    than five times an hour; (4) avoiding all squatting and kneeling; and, (5) alternating between

16    sitting and standing as tolerated. (AR 283.) Under Social Security Ruling 83-10, these

17    restrictions are consistent with a finding that plaintiff is capable of sedentary exertional level

18    work. *See* SOC. SEC. RUL. 83-10. Although a treating physician's opinion is typically entitled to

19    controlling weight, Dr. DeMourdaunt's recommended restrictions were "inconsistent with the

20    other substantial evidence in [plaintiff's] case record…." *See* 20 C.F.R. §§ 404.1527(c)(2),

21    416.927(c)(2). Specifically, the ALJ noted that in November 2011, Dr. Betz restricted plaintiff

22    to lifting no more than ten pounds, pushing and pulling no more than twenty pounds, and no

23    prolonged bending. (AR 35.) These restrictions are consistent with light work. *See* SOC. SEC.

24    RUL. 83-10. In August 2012, Dr. Burke suggested permanent restrictions and referred plaintiff to

25    a functional capacity evaluation to determine those restrictions. The evaluation restricted plaintiff

26    to light work. (AR 35; *see* AR 316–323.) In September 2013, plaintiff's neurologist, Dr.

27    Christopher T. Patin ("Patin"), reviewed studies done on plaintiff's back and stated that he "has

28    essentially normal MRI of the cervical spine and lumber spine," which made it unclear "why he is

complaining of numbness and tingling." (AR 36; AR 403–27.) The ALJ gave the greatest weight to the findings of the state agency physicians, who determined plaintiff to be capable of light work, since their opinions were consistent with the record as a whole. (AR 37; AR 71–74, 93–99.)

While the ALJ did not directly state that she rejected Dr. DeMourdaunt's opinion of plaintiff's restrictions, she was not required to recite "magic words" explaining her decision. *See Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989). The court may infer from her thorough summary of the facts and conflicting clinical evidence that she gave little weight to Dr. DeMourdaunt's restriction recommendations because they were inconsistent with the restrictions assessed by Dr. Betz and Dr. Burke, and the medical opinion of Dr. Patin. *Id.* Consistency with the medical evidence in the record is a specific and legitimate reason for accepting the state agency physicians' opinions over Dr. DeMourdaunt's opinion. *Tommasetti*, 533 F.3d 1041. Dr. Betz was a treating physician at the time of his opinion, and Dr. Burke was an examining physician, so their opinions that plaintiff is capable of light work provides substantial evidence for the ALJ's finding. *Lester*, 81 F.3d at 831; *see Conahan v. Sebelius*, 659 F.3d 1246, 1249 (9th Cir. 2011) ("Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (internal quotations omitted). The ALJ properly rejected Dr. DeMourdaunt's recommended restrictions in favor of the opinions of the other physicians of record that plaintiff is capable of light work.

**2.    The ALJ permissibly discounted plaintiff's subjective testimony.**

Next, plaintiff argues that the ALJ erred in failing to articulate clear and convincing reasons for discounting plaintiff's testimony. (ECF No. 14 at 12–15.) In her decision, the ALJ found that plaintiff's testimony regarding the intensity, persistence, and limiting effects of his symptoms was not entirely credible. (AR 36.) The ALJ articulated three main reasons for discounting plaintiff's subjective complaints: (1) she found evidence that plaintiff exaggerated his symptoms; (2) plaintiff had gaps in his treatment record that undercut his claims of disabling pain; and, (3) plaintiff's testimony regarding his symptoms lacks the support of objective evidence. (*See* AR 36–37). The court considers each reason in turn.

1                 *i.   Plaintiff exaggerated his symptoms.*

2          The ALJ found evidence that plaintiff had a tendency to exaggerate the severity of his

3    pain symptoms.   (AR 36.)   To illustrate his tendency to exaggerate, the ALJ noted Dr. Burke's

4    observation in August 2012 that plaintiff was hypersensitive to pain, "consistent with symptom

5    magnification."   (AR 35; AR 321–23).   Plaintiff disputes the ALJ's credibility finding on this

6    basis, (ECF No. 14 at 13), because the ALJ mentioned Dr. Burke's finding of Waddell signs, but

7    did not discuss Dr. Burke's finding that plaintiff did not meet the criteria for non-organic pain.

8    (AR 35.)   However, the ALJ's finding that plaintiff has a tendency to exaggerate does not rely on

9    plaintiff's pain being "non-organic" or fabricated.   *See Reinertson v. Barnhart*, 127 F. App'x 285,

10   289 (9th Cir. 2005) (explaining the import of Waddell signs).   Rather, the ALJ permissibly relied

11   on Dr. Burke's opinion that plaintiff is magnifying his symptoms, regardless of what caused

12   them.   The ALJ also noted Dr. Patin's opinion that "it is not clear to me why he is complaining of

13   numbness and tingling … given the fact that he has essential normal MRI of the cervical spine

14   and the lumbar spine."   (AR 36; AR 419.)   Dr. Burke and Dr. Patin's opinions provide substantial

15   evidence   for   the   ALJ's   finding   that   plaintiff   had   tendency   to   exaggerate   his   symptoms.

16   *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).   The court finds that plaintiff's

17   exaggerations are clear and convincing reasons for the ALJ's decision to discount plaintiff's

18   subjective testimony regarding his symptoms because his testimony may not be entirely accurate.

19   *See id.*

20                *ii.   Gaps in Treatment Record*

21         The ALJ found that the gaps in plaintiff's treatment record indicate that his pain was not

22   as severe as he alleged.   (AR 36.)   Specifically, the ALJ noted that plaintiff stopped seeking

23   treatment for his first back injury after his examination with Dr. Burke in August 2012.   (*Id.*)

24   Plaintiff sought treatment only after suffering a second back injury that occurred in January 2013.

25   (*Id*; AR 337.)   The ALJ emphasized the fact that plaintiff did not immediately seek treatment for

26   his second back injury, and instead waited "several months" before reporting his back pain.   (AR

27   36; AR 337.)   Plaintiff does not take issue with the ALJ's factual findings, but contends that the

28   ALJ committed reversible error by failing to consider whether poverty or insurance concerns

1  played a role in plaintiff's inability to pursue treatment for his back conditions.  (ECF No. 14 at

2  14.)  Plaintiff alleges that he discontinued treatment of his first injury because he had to stop

3  working, and that he postponed seeking treatment for his second injury because it "was likely not

4  covered by any type of Worker's Compensation insurance."

5  The Ninth Circuit has observed that "although a conservative course of treatment can

6  undermine allegations of debilitating pain, such fact is not a proper basis for rejecting the

7  claimant's credibility where the claimant has a good reason for not seeking more aggressive

8  treatment."  *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

9  However, the *Carmickle* court qualified this nuance by explaining that the record in that case

10  demonstrated the unavailability of more aggressive treatment options.  *Id.*  Otherwise, the Ninth

11  Circuit has typically deemed the discrepancy between the frequency of treatment and the level of

12  pain alleged to be a legally sufficient reason for discounting credibility, and makes no mention of

13  an affirmative duty imposed upon an ALJ to discern the reason for delaying treatment.  *See Parra*

14  *v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007); *Burch v. Barnhart*, 400 F.3d 676 (9th Cir. 2005).

15  Plaintiff cites to *Gamble v. Chater*, 68 F.3d 319 (9th Cir. 1995), but this case is inapposite

16  as it holds solely that a disability claimant may not be denied benefits where his or her condition

17  is remediable but the remedy, such as a prosthetic, is unaffordable.  *Gamble*, 68 F.3d at 321.  The

18  record does not demonstrate that more aggressive treatment options were unavailable to plaintiff

19  for purely financial reasons.  In fact, the ALJ points out that plaintiff had the opportunity to elect

20  surgery or additional epidurals, but refused to do so because of his fear of invasive treatment, not

21  because of poverty.  (*Id.*; AR 316–23.)  In any event, the ALJ did not take issue with plaintiff's

22  failure to seek out more aggressive, and expensive, treatment options.  Rather, the ALJ focused

23  on plaintiff's failure to continue treatment that he had previously engaged in, and his subsequent

24  failure to immediately report his second back injury to a medical professional.  (AR 36.)  By

25  eventually resuming treatment, plaintiff established that poverty was not a bar to timely and

26  consistently seeking out that treatment.  The ALJ was not required to inquire as to why plaintiff

27  paused his medical treatment because it did not appear related to plaintiff's financial state.

28  *Molina v. Astrue*, 674 F.3d 1104, 1113–14 (2012).  Substantial evidence supports the ALJ's

11

determination that plaintiff had gaps in his treatment record.  This is a clear and convincing reason to discount plaintiff's testimony of the severity of his symptoms because it implies that plaintiff's pain is not as debilitating as alleged.  *Id.*  The ALJ's determination is free of error.

> ### iii.    *Lack of Objective Medical Evidence*

Finally, the ALJ's citation to the lack of strong support provided by the objective medical evidence is a "clear and convincing" reason for discrediting plaintiff's testimony.   Plaintiff contends that the ALJ erred by discrediting his testimony based solely on an alleged lack of medical evidence.  (ECF No. 14 at 14.)

Plaintiff's argument fails.  The ALJ did not state that no objective medical evidence supported plaintiff's allegations of pain, but rather, that the record did not strongly support a finding of *disabling* pain.  Based on the totality of the medical evidence, the ALJ concluded that the evidence provided an insufficient basis to find disability.   The ALJ supported her determination by pointing to the findings of Dr. Burke, Dr. Patin, and the state agency reviewing physicians.  (AR 34–36.)  In particular, the ALJ discussed diagnostic findings from medical exams noting that plaintiff's back injuries did not necessitate surgery and only presented minimal abnormalities that were "essentially normal."  (*Id.*; AR 316-23, 419.)  The ALJ's conclusion that the objective medical evidence did not strongly support plaintiff's allegations is supported by substantial evidence in the record.  Although a lack of objective medical evidence cannot be the sole basis for discounting credibility, the ALJ may properly consider it among other factors.  *Burch*, 400 F.3d at 681.

> ### 3.      The ALJ hypothetical.

Plaintiff raises a challenge to the hypothetical the ALJ posed to the vocational expert.  (ECF No. 14 at 15.)  Plaintiff contends that the hypothetical was inadequate, because the ALJ neglected to mention her finding that plaintiff is limited to "occasional manipulative tasks bilaterally …."  (*Id.*; AR 34.)  Defendant argues that the ALJ's RFC assessment properly takes into account all of plaintiff's limitations, that the record supports the ALJ's reasonable assessment of the evidence, and any error is harmless.  (ECF No. 16 at 8–11.)

At the fifth step of the sequential analysis, the Commissioner bears the burden of demonstrating that there are significant jobs available in the national economy which the claimant can perform.  20 C.F.R. § 404.1560(c).  The ALJ can meet this burden by asking a vocational expert about a hypothetical individual who has a set of limitations mirroring those of the claimant.  *Hill*, 698 F.3d at 1161.  To be considered reliable, the hypothetical "must include *all* of the claimant's functional limitations, both physical and mental," that are supported by substantial evidence.  *Thomas*, 278 F.3d at 956 (internal quotation omitted) (emphasis added); *Robbins*, 466 F.3d at 886.  Otherwise, the testimony of the vocational expert "has no evidentiary value to support a finding that the claimant can perform jobs in the national economy."  *Hill*, 698 F.3d at 161–62.

At the hearing, the ALJ offered the following hypothetical:

> We have a claimant who is 51 on the alleged onset date. He says he's educated to the sixth grade. The record indicates that he's educated to the 12th but we'll verify that …. He's limited pursuant to 7-A, which based on a review of the record, to lifting 20/10, stand/walk, sit six of eight.  Therefore, we would limit him to a light level of work. He should avoid any kind of work that requires repetitive climbing. Posturals would be occasionally.  Manipulatively, he should avoid continuous overhead reaching.  Environmentally, he should avoid the cold and he should further avoid hazards, which would be working at heights, or operating dangerous moving machinery.  Now, with those limitations, can he do his past relevant [work]?

(AR 63–64.)  In addition, plaintiff's attorney further restricted the hypothetical to describe an individual (1) who is capable only of sedentary level work; or (2) who is not sedentary but must lie down two hours a day. (*Id.* at 64–65.)  The vocational expert testified that there were jobs available in the national economy for someone with the limitations described by the ALJ, but that an individual who was either sedentary or required to lie down two hours a day would be precluded from finding employment.  (*Id.* at 65.)

Plaintiff is correct that the ALJ did not include in her hypothetical a limitation to occasional manipulative bilateral tasks.  However, the ALJ directly told the VE that plaintiff was limited according to exhibit 7-A, which contains the state agency physician's assessed functional limitations.  (AR 63–64.) Exhibit 7-A clarifies that plaintiff is restricted from reaching overhead bilaterally, but that his other manipulative capacities – his handling, fingering, and feeling

1   capacities – are unlimited.  (AR 96-97.)      The ALJ states elsewhere in her opinion that she gave

2   the greatest weight to the findings of the state agency doctors, so the court may infer that the

3   ALJ's RFC determination that plaintiff is limited to occasional manipulative tasks bilaterally

4   means only that plaintiff is limited in his ability to reach overhead, as set forth in Exhibit 7-A.

5   Seen this way, plaintiff's manipulative task limitations are adequately accounted for within the

6   ALJ's initial hypothetical.  The plaintiff's insistence that the ALJ intended her RFC determination

7   to include further limitations on occasional manipulative bilateral tasks is, at best, an issue with

8   the ALJ's "literary skills" in communicating her RFC determination through her opinion.  *See*

9   *Stephens v. Heckler*, 766 F.2d 284, 387 (7th Cir. 1985).  This is not a proper basis for invalidating

10  the VE's response to the ALJ's hypothetical. *See id.*

11          Plaintiff also contends that the ALJ erred because her hypothetical to the VE did not

12  include Dr. DeMourdaunt's functional limitation assessment and plaintiff's symptom testimony.

13  (ECF No. 14 at 15–16.)  While the hypothetical question to the VE must set out all the limitations

14  and restrictions of a particular claimant, the ALJ is not required to include conclusions that she

15  has properly discredited.   *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175–76 (9th Cir. 2008).

16  As discussed above, the ALJ properly determined that Dr. DeMourdaunt's limitation assessment

17  is entitled to less weight than the opinion of the state agency physicians.   She also properly

18  discounted plaintiff's pain testimony.   The hypothetical questions posed by the ALJ and

19  plaintiff's counsel account for all of plaintiff's limitations "for which there was record

20  support…." *Bayliss*, 427 F.3d at 1217.  Therefore, the vocational expert's testimony that plaintiff

21  is capable of performing other work in the national economy constitutes substantial evidence to

22  support the ALJ's finding of no disability. *Gallant*, 753 F.2d at 1456.

23                                    **IV.     CONCLUSION**

24          The ALJ did not err in her step four analysis because she properly considered, and

25  rejected, plaintiff's treating physician's opinion regarding plaintiff's functional limitations.  The

26  ALJ also properly discounted testimony regarding the intensity, persistence and limiting effects of

27  his symptoms.  Finally, the ALJ did not err in her step five analysis, as her finding that plaintiff

28  remained able to perform other work in the national economy was supported by substantial

evidence in the record.  Accordingly, the court recommends that plaintiff's motion for remand (ECF No. 14) be denied and that defendant's cross-motion to affirm (ECF No. 16) be granted.

1.      Pursuant to 28 U.S.C. § 636(b)(1)(c) and Local Rule IB 3-2, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.      This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V.      RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that plaintiff's motion for remand or reversal (ECF No. 14) be **DENIED** and defendant's cross-motion to affirm (ECF No. 16) be **GRANTED.**

**IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** and close this case.

**DATED**: January 10, 2018.

**UNITED STATES MAGISTRATE JUDGE**